Baldwin, J.
The law gives dower to the widow, as a source of income for the maintenance of herself and family. It is a provision founded in justice and humanity, and highly favoured both at law and in equity. Her essential right is to the profits of one third of her husband’s real estate of inheritance, whereof he was seized at any time during the coverture; and she is entitled for that purpose to the several possession of one-third of the subject, if susceptible of a division by metes and bounds. If the subject be not so partible, still she is admitted to her due participation of the pro *525 fits; and the mode of enioyment is adapted to the na- ' o •/ x ture of the case. The nature of the property is wholly immaterial, as regards the right to dower, provided it • be, or savour of, the realty; and this is equally true in regard to the nature of its products. Thus a widow is dowable of lands, whether arable, meadow, or woodland ; of manors, houses, mills and factories; of rents, whether rentcharge, rentseck, or rentservice; of dovecotes and warrens; of fairs, markets, ferries and fisheries ; of common certain, gross or appendant; of advowsons, gross or appendant; of tithes; of shares in, road or navigation companies, &c.
But the widow’s enjoyment is, by reason of her limited estate, confined to the use and products of the property; and she may not despoil or waste it, to the disherison of the heir; she is to enjoy, but not abuse it; to take the profits, but not convert or break in upon the capital. Like other tenants for life, the restriction upon her exercise of ownership is to be found in the law of waste. What shall be considered waste is to be determined, in general, by the mode, not the extent, of enjoyment to which the tenant succeeds. The tenant is not at liberty to convert arable land into meadow, or meadow into arable land ; nor a mill into a dwelling house or brewery; though not only the immediate profits, but the permanent value of the property, be thereby enhanced. The removal of the soil and minerals, and the opening of new mines, are also prohibited. But if mines have been opened or worked by one having authority as the owner of the fee, the dowress may continue to work them, and that without stint; and moreover sink new shafts for the purpose, into the same mine, vein, bed or body of the mineral so devoted to the yielding of profit.
Waste in woods is to a great extent, though not exclusively, governed by the general rule already mentioned. In the country from which we derive our laws, *526 timber is of such importance that it enters largely into t the value of the subject, and its preservation is deemed essential to the protection of the inheritance. The tenant is therefore prohibited from cutting it at all. To ^ere are some exceptions, arising out of the duty and wants of the tenant; to whom certain estovers are allowed, for the reparation of the buildings and enclosures, the construction of agricultural implements, and for the supply of fuel. These involve a question as to the extent of the tenant’s enjoyment; and that depends, more or less, upon the exigencies of the occasion, the abundance or scarcity of the material, and the local usages of the county or vicinage.
In regard to mines, the english doctrine (for which see Stoughton v. Leigh, 1 Taunt. 402.) is not unsuitable to the condition of our country, and has been recognized in Crouch v. Puryear &c. 1 Rand. 258. and Coates v. Cheever, 1 Cowen 460. As to waste in woods, though the principle which prevents timber from being cut, to the detriment of the inheritance, is the same in both countries, yet the application here of the rigid rule that prevails in England would defeat its own purpose. Instead of the scarcity existing there, we have often a superabundance here, and the clearing of lands, to a greater or less extent according to circumstances, may enhance instead of diminishing the value of the property. With us, therefore, the restraint upon the power of the tenant for life ought, in this respect, to have reference not to the mode but to the extent of enjoyment. In England, the tenant may cut and sell the coppice and undergrowth, and even young timber trees under a certain age, at seasonable times, 1 Lomax’s Dig. 52. Pigot v. Bullock, 1 Ves. jun. 479.; and the reason assigned is, that no advantage can arise to a tenant for life from woods of that kind, but by the sale of them : and what shall be considered timber trees there depends in some measure upon local usages, arising out of the peculiar *527 growths of various tracts of country. Here it is enough that the tenant does no wanton mischief, and leaves a sufficient supply of timber for the wants of him in re- . . . mainder or reversion.
That the law of waste, in its application here, must be varied and accommodated to the circumstances of our new and comparatively unsettled country, was recognized by all. the judges who noticed that topic, in Findlay v. Smith &c. 6 Munf. 134. And chancellor Kent, in his Commentaries, vol. 4. p. 76. says, that the american doctrine on the subject of waste is somewhat varied from the english law, and is more enlarged and better accommodated to the condition of a new and growing country. The proposition is well sustained by adjudged cases. In Jackson v. Brownson, 7 Johns. R. 227. it was held that the tenant may clear part of wild and uncultivated land for the purpose of cultivation, but must leave wood and timber sufficient for the permanent use of the farm ; and that it is a question of fact for a jury, what extent of wood may be cut down in such cases without exposing the party to the charge of waste. In North Carolina, it has been held not to be waste to clear tillable land for the necessary support of the tenant’s family, though the timber be destroyed in clearing. Parkins v. Coxe, 2 Hayw. 339. And in Pennsylvania, in the case of Hastings v. Crunckleton, 3 Yeates 261. the court said, it was an outrage upon common sense to apply the english law of waste to a widow’s use of uncleared dower land in this country; and held that she may clear, if she do not exceed the relative proportion of cleared land, considering the tract as a whole.
In the case before us, the widow’s claim was to dower in a large tract of swamp land, incapable of cultivation, and stated in the answer of the principal defendants (the Dismal Swamp land company) to be “ no otherwise productive or valuable than by working the timber, and *528 making sale thereof when converted into shingles.” If a tenant for life cannot have the use of it for that purpose, it is to such tenant utterly worthless, and a mere burthen. If a dowress may not enjoy it in the only m°de °f which it is susceptible, she may be left to starve, though her husband’s whole capital has been invested in it with a view to annual profits. It is said, that if it cannot be enjoyed but by cutting down and selling the timber, that being waste, it serves to shew that she cannot be endowed at all. But this is founded upon the idea that she is not at liberty to cut down the timber except for the purpose of tillage; a proposition which, to my mind, cannot be maintained. She may, as I conceive, in such a case as this, cut down the timber ad libitum, and make all the profit of it she can, provided she does not thereby prevent the reversioner from making the like profit. By our law of waste in woods, the restraint upon the tenant has reference not to the mode but the extent of enjoyment. If enough be left for the successor to the inheritance, he has no cause of complaint ; and what will be enough is a question of fact, to be determined upon all the circumstances of the case. In cases like this, the extent of the tract, the quantity of timber, the period of reproduction, the demands of the market, the expenses of the employment, are all elements of the enquiry ; and if these should lead in such cases to a just and convenient rule of uniform application, I presume it will be this, that the tenant’s use of the timber shall be so restricted as to leave to the successive tenants and owners an equally extensive use of it, at least.
There are other facts in this cause which give additional force to the widow’s claim of dower. Her right was not only admitted, but the substantial enjoyment of it allowed, for several years, by the defendants now in possession. In the years 1816 and 1817, the Dismal Swamp land company made payments to her on account *529 of her interest in the profits, and took from her bonds conditioned for refunding the moneys in case an adverse title should be established as paramount to that of her husband ; in which bonds her right as dowress to third of the timber worked by the company is distinctly stated: and in 1825 an order was made by the company for a further payment to her on the same account, which payment had been previously directed by a former order in the year 1818. Her right had also been recognized by the trustees in the deed of trust from her husband (under which all the defendants claimed), and payments made to her by the trustees of one third of the dividends of proceeds, in February and November 1801.
Whether these circumstances were equivalent to an actual assignment of dower, I deem it unnecessary to enquire. They surely amount to such a recognition of the widow’s right, as to dispense with all evidence on her part, and throw the whole burthen of proof on the other side. The bill charges, not only that the husband was and died seized of his undivided moiety of the land, but that, previous to as well as since his death, the timber was worked, and large profits derived from the sale of shingles &c. This allegation is not denied by the answer of the Dismal Swamp land company, and under the circumstances above mentioned must be taken as true as respects those defendants, at least until disproved.
The case is thus presented of a dowress succeeding to a mode of enjoyment of the property adopted by the husband himself; and is not unlike the cáse of an open mine, which unquestionably may be worked by her to any extent. It is, in truth, a mine upon the surface; not of minerals, incapable of renewal, but of vegetable matter, in a constant course of spontaneous reproduction. The right of a dowress to work such timber has been recognized in North Carolina; for in Ballentine v. *530 Poyner, 2 Hayw. 110. it was admitted that the tenant 4 4 in dower may use timber for making staves and shingles, when that is the ordinary use, and the only use, ^ made of such lands.
The widow having died pending this suit, her right to dower is only important as it affects the claim of her executor to mesne profits till the period of her death. Though at law the damages for mesne profits are lost by the death of either plaintiff or defendant in dower before judgment therefor, it is well settled to be otherwise in equity, from the consideration that the profits of a third part of her husband’s real estate are her only subsistence from his death. 1 Roper on Husband and Wife p. 452.
But the plaintiff’s claim to mesne profits is resisted, upon the authority of Thomas v. Gammel & wife, 6 Leigh 9. and Tod v. Baylor, 4 Leigh 498. In the former, it was held that mesne profits cannot be recovered at law by the widow against the alienee of her husband, because the statute of Merton, adopted into our code, gives damages only where the husband dies seized; and in the latter, that they cannot be recovered in equity, which conforms to the law in this respect. These cases give the rule where the husband in his lifetime has conveyed the land to a purchaser; but they have no application to incumbrances by mortgage or deed of trust, which are only securities for the payment of money, and still leave the grantor owner of the estate. Where the husband sells and conveys the estate by an absolute deed, though during the coverture, there is nothing left in him ; and therefore,- though the wife who has not united is entitled to dower, because he was at one time seized during the coverture, yet she cannot recover damages or mesne profits against the alienee, because her right to these is founded upon the statute of Merton, which requires the husband to have died seized. But where the land is mortgaged by the husband after marriage, he is *531 to be regarded as seized until foreclosure; and even • • • where the wife has united in the mortgage, she is entitied not only to dower in the equity of redemption, but to an account of the mesne profits from the death of husband. He is to be considered as having died seized of the equity of redemption, or of the real estate subject to the mortgage; and in such case the settled course is to compute the rents and profits from the husband’s death. Swaine v. Perine, 5 Johns. Ch. R. 482. Hale v. James, 6 Id. 258.
The case of the incumbrance in question cannot be distinguished from a mortgage, or ordinary deed of trust, to secure the payment of money. It contains, indeed, no clause of redemption, and provides that the trustees, so soon as they conveniently can, shall sell the property conveyed, and out of the proceeds pay the debts specifically mentioned as intended to be secured, and pay the residue, if any, to the use of any other creditors of the grantor. Still, however, an equity of redemption was inherent in the very nature of the instrument, and none of the cestuis que trust could have been entitled to more of the proceeds than enough to satisfy their demands.
In this case, there is nothing to prevent an account of the mesne profits from the time of the husband’s death, as respects the defendants originally accountable, against whom the claim has been asserted in due time. For reasons already suggested, the husband must be regarded as having been seized during the coverture and at the time of his death. In equity, the account of mesne profits is usually given from the time of the husband’s death, the widow being prima facie entitled from the lime her right to endowment accrued; and some reason must be shewn by the defendant to limit the account. 1 Roper on Husband and Wife p. 453. Oliver v. Richardson, 9 Ves. 222. The statute of limitations is no bar, either at law or in equity. Ibid. The mesne profits *532 are assessed upon the defendants respectively, according to the time of their respective enjoyment of the land. Hazen v. Thurbur, 4 Johns. Ch. R. 604.
q^ere is no reason why the defendants in possession, Di'smcd Swamp land company, should not account for one third of the whole of the clear profits received by them from their undivided moiety of the 8000 acres, subject to credits for the payments made by them to the widow ; nor why that account should not be brought down to the period of the widow’s death. It is too late to enquire (if that was ever proper) whether the timber was worked to such extent, that the widow’s share of it would exceed what she would have been entitled to if her dower had been assigned to her by metes and bounds. The course of conduct pursued by the principal defendants has been such as in itself to preclude any enquiry of that sort, as respects them. After having recognized her right to one third of the profits for a .number of years, and making her payments from time to time on that basis, they were not justifiable in refusing to continue that mode of adjustment, at least until dower was formally assigned. It is true they say in their answer, that in the year 1820 they disclaimed all future operations on the former plan, and informed the widow that she might have her dower assigned and laid off in the land. But of this there is no proof; and if there were, it was their duty, at least after what had occurred, to assign the dower specifically, and, as that could not be done without partition with their tenant in common, to procure such partition.
As regards the trustees, and the executor of Jameson, I think the plaintiff is entitled to no account, and that the bill was properly dismissed as to them. The bill upon its face shews a delay, without excuse, of more than twenty years in calling them to an account. The surviving trustee swears positively that he paid over to the widow every dollar for which he and his cotrustee *533 were accountable, and exhibits vouchers in proof of his * allegation. The widow, by her own shewing in her bill, prosecuted to recovery a suit against the executor » • of Jameson, for her share of the profits received by him ; and the only pretext for a further demand, and that without a shadow of proof, is that she did not recover enough.
It may be doubted whether it was proper to make the representatives of Sexton the copatentee and tenant in common with the husband, and those claiming under them, parties in this suit, by the amended bill, filed after the widow’s death; inasmuch as no assignment of dower could then be sought, and if the plaintiff can have any claim against them, it must grow altogether out of a settlement of accounts between them and the Dismal Swamp land company. But as they have never answered, and the bill has been taken for confessed against them, and it is possible that in the progress of the account to be directed the propriety of convening them may be made to appear, I think it was premature to dismiss the bill in regard to those defendants.
My opinion is, that the decree of the circuit court is erroneous in dismissing the plaintiff’s bill, except as against the trustees and Jameson's executor; and that it ought to be reversed, and an account directed of the plaintiff’s one third of the mesne profits received by the Dismal Swamp land company prior to the widow’s death, and of the payments made to her by them ; with a view to a decree for any balance which may be found due to the plaintiff.
Allen, J. concurred in the opinion delivered by judge Baldwin.
Brooke, J.
The company having acknowledged the right of the widow to one third of the profits of the land in which she claims dower, by paying her from time to *534 time her portion of those profits, it is now too late for * ^ them to question that right. The objection that the subject is such that she cannot claim dower has nothing timber on the land being the only subject of profit, the destruction of her portion of it cannot make her liable to the charge of committing waste, as in other cases at the common law, in which timber belongs to the reversioner, with the exception of housebote, firebote, &c. Had the company refused to pay her one third of the profits, the suit would have been brought at an earlier period, when her dower in the land would have been assigned her. As to the time from which she was entitled to one third of the profits, this case is not like that of Tod v. Baylor. In that case the husband did not die seized of the land, and the court thought the widow was only entitled to profits from the issuing of the subpoena, with the exception of the president, who thought that she was only entitled to profits from the date of the decree. In the case before us, the deed of trust executed by the husband was an incumbrance only, and he died seized of the land. The widow was therefore entitled to profits from the death of her husband to the time of her own death, according to the statute of Merton, adopted in our act concerning dower. I therefore concur in the decree that has been agreed on by the court.
The decree of the court of appeals was entered in the following terms:
This court is of opinion that the decree of the circuit superior court is erroneous, except so far as the same dismisses the bill of the appellant against the trustees of Alexander Macaulay, and the executor of John Jame-son: therefore it is decreed and ordered, that the said decree, so far as the same is above declared to be erroneous, be reversed and annulled, and that the residue thereof be affirmed, and also that the appellees the *535 Dismal Swamp land company do pay unto the appellant his costs by him expended in the prosecution of his appeal aforesaid here, and further that the appellant, out of the estate of his testatrix in his hands to be tered, do pay unto the appellees the representatives of John Jameson, Thomas Griffiji and Thomas Nelson their costs by them about their defence in this behalf expended. And it is ordered that the cause be remanded to the said circuit superior court, with instructions to direct an account of the appellant’s testatrix’s one third of the mesne profits received by the Dismal Swamp land company prior to'her death, and of the payments made to her by them, with a view to a decree for any balance which may be found due to the appellant.